## O. M. BILHARZ MINING CO. et al. v. ARRIC et al.

No. 22592. Opinion Filed Feb. 9, 1932.

Rehearing Denied March 1, 1932.

J. Fred Swanson, Ray McNaughton, and Arthur G. Croninger, for petitioners.

I. N. Kuhn, J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for respondents.

KORNEGAY, J. This is an original proceeding to review an award of the State Industrial Commission. The award complained of is as follows:

"Now, on this 17th day of June, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing held at Miami, Okla., on the 12th day of November, 1930, before Commissioner F. L. Roblin, and a hearing held June 8, 1931, at Miami, before Chairman Thos. H. Doyle, to determine liability and extent of disability, at which hearings the claimant appeared by his guardian, Irma Arric, and his attorney, I. N. Kuhn, and the respondent and insurance carrier appeared by H. R. Palmer and Edgar Fenton, and the Commission after reviewing the testimony taken at said hearings, and the depositions on file, and all the records on file, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"1. That on the 5th day of May, 1930, the claimant was in the employment of said respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date sustained an accidental injury, arising out of and in the course of his employment, consisting of an injury to the back, spine, and head.

"2. That the average wage of the claim-

ant at the time of said accidental injury was $6.25 a day.

"3. That by reason of said accidental injury, the claimant has been temporarily totally disabled from the performance of manual labor since the 5th day of May, 1930, and is now temporarily totally disabled from the performance of ordinary manual labor.

"4. That Irma Arric has been appointed his duly qualified and acting guardian by the county court of Ottawa county.

"Upon consideration of the foregoing facts, the Commission is of the opinion that the claimant is entitled to compensation from the 5th day of May, 1930, to June 17, 1931, at the rate of $18 per week, or 57 weeks and four days less the five-day waiting period, in the total sum of $1,038, and that said compensation should be continued at the rate of $18 per week until otherwise ordered by the Commission.

"It is further ordered, that within 15 days from this date, the respondent or insurance carrier pay to Irma Arric, the duly appointed, qualified, and acting guardian of Orville Arric, the sum of $1,038, and continue paying said Irma Arric the sum of $18 per week until otherwise ordered by the Commission, and to pay all medical, hospital, and doctor bills incurred by reason of said accidental injury.

"It is further ordered: that within 30 days from this date, the respondent or insurance carrier file with the Commission proper receipt or other report evidencing compliance with the terms of this order."

The attending physician's report to the Industrial Commission was received on May 10, 1930. The date of the accident was given as May 5, 1930, and the doctor said he furnished the necessary medical supplies. The claimant was removed to the American Hospital at Picher, and the description of the injury was given as "contusion of back." The treatment given was "rest in bed, lin rub, hot tub bath daily, hot water bottle, diathermia." It was stated that the symptoms were entirely due to the injury. There was no answer to his being able to attend to his occupation, and the answer to permanent disability was "no." The answer as to previous sickness or injury was "no." As to the existence of various other diseases, including syphilis, the answer was in the negative. The estimate is two or three weeks as to the length of disability, and in the words of the parties the accident occurred as follows:

"While walking on floor of sludge mill I stepped in pool of oil and my feet flew from under me when I fell."

This was signed by E. Albert Aisenstadt, of Picher, Okla., who was a graduate of the University of Illinois College of Medicine in the year 1912.

On the 17th of May, 1930, the employer's first notice of injury was received, and it appeared to have been at mill No. 2, two and one-half miles north of Commerce, Okla., and the date of the accident was given as the 5th of May, 1930, and the hour was 6:45 p. m., and the answer as to the employee being injured in the course of his employment was, "Do not know for sure that employee was injured." He had been in the employ of the company for four years. In answering as to how the accident occurred, it was, "It is claimed by employee that he fell on concrete floor, bruising back, but no one saw him fall." As to the nature and extent of the injury, the answer was, "Claimed bruised back." It is stated that medical attention was provided the same day of the accident by Dr. Ralston of Commerce, and then he was moved to the American Hospital at Picher. The answer as to returning to work and recovering was "no." This was signed on the 15th day of May, 1930, at Miami, by A. J. Polette, on behalf of the company.

Employee's first notice of injury was received June 4, 1930, and the cause of the accident was stated to be "fell on concrete pier," and the nature and extent of the injury was "back, spine and head, now confined in hospital for insane, Vinita, Okla., by reason of injury." It was probably total disability. It was claimed that the accident resulted in insanity. It was stated that the attending physician was Dr. Aisenstadt at the American Hospital in Picher, and that the injured person was in the hospital for the insane at Vinita. This was signed by the wife of Orville Arric.

Notice of hearing at Miami was given, and the present petitioners filed an answer denying that the claimant was injured by accident arising out of and in the course of his employment on May 5, 1930. They also denied that the disability resulted from an accidental injury, for which they would be liable to the claimant. The further defense was made that claimant did not give proper notice of his injury within a reasonable time, and therefore their rights were prejudiced. Prayer was that he take nothing.

The testimony was all given on behalf of the claimant, the carrier not putting in any testimony. At the beginning, the attorney

for the petitioner stated that Dr. Laugh had much to do with the case, and that he was now in Los Angeles, Cal., and he asked for permission to take his deposition, and it was granted.

The guardian was substituted for the claimant, and was permitted to testify without objection that Arric was 36 years old that day, and had been working in the mines for five years. Thereupon the petitioners admitted that claimant was in the employ of the company on the 5th day of May, 1930, in the capacity of table man. She was permitted to testify without objection that the man had four children, but statement as to their age was objected to. She stated that she and claimant were married on the 3rd of September, 1917, and that there was nothing wrong with the claimant mentally, though objection was made to the statement about his loving his children and liking his neighbors. She stated that he came home the night of the accident and "they brought him home hurt." This was objected to as calling for a conclusion, and she stated over objection that he had hurt his back. That he was complaining of his back and was in bed, but was taken to the American Hospital the next day. He remained there until the following Tuesday, and they took him to the hospital for the insane at Vinita. During the last year he had not suffered with any serious diseases.

On cross-examination it developed that his tonsils were removed the 1st of March, and Dr. Ralston and Dr. Pinnell of Miami performed the operation. His father testified over objections that there had been no insanity in the family on either his father's or mother's side. He had not seen his son since the Sunday when he was at the Picher hospital before they took him to Vinita, and that he had seen him about the last of January before that, and that there was nothing wrong with him then. That he weighed 190 to 210 pounds. On cross-examination he said he last saw claimant the 17th of April. He was asked if the claimant was religious, and he stated that he had talked to him about it on one occasion.

The mill foreman, John Cox, was introduced and stated that the claimant had been in his employ for about five years, and did his work in a competent manner. Another mill foreman, John Maney, testified that he had known the claimant for quite a while before the accident, and that he worked for him until he was hurt, but the court struck this out. That he helped get him up off the floor, and that his duties were to oil the pump at evening. He said that Mr. Crowe was in charge of the floor department and motioned for him to come to that part of the building, and he found Arric lying on the floor, and the witness started to tell what happened, but evidently the stenographer did not get it all in the record. He was asked what time the accident was observed by him, but the court sustained the objection to this question. That he way lying between two tables on the floor, and that the witness helped to get him up, and brought him back to a seat, and changed his clothes, and took him in his car to Dr. Ralston. He took him home and the next morning he was in bed. Afterwards he told the superintendent that the man wanted to go to the hospital and that he had not observed anything wrong with him before. He was cross-examined by the attorney for the petitioner, and stated he was a good worker and attended to his duties.

Ernest Crowe stated he was employed in the mines, and had been for 13 years, and had known the claimant for four years, and that the last time he saw the man he was standing at a car talking to the witness, and at 6:45 he heard him "holler," and he went to see what was the matter with him, and he helped pick him up and sat him down by the pillar, and he was taken home.

Floyd Johnson testified that he was working for the petitioner and had known the claimant for five years, and that the night shift came on to relieve the others, and the claimant came from the mill. It was stipulated that Messrs. Gunnett and Anderson would testify about knowing the claimant, and their testimony would be the same as that of Johnson and Maney.

The case was continued until the next Miami docket, from the 12th of November, 1930, until the 8th of June, 1931. The parties appeared by attorney, and his guardian, Irma Arric, the wife of the claimant, and the Commission held she was not competent, but she had already testified without objections, and the court said that the testimony theretofore taken would be considered.

Dr. Hefler testified about seeing the patient several months ago at the Vinita hospital for the insane, and he got a history from the hospital record, but was not permitted to say what it was. He said he found a man 30 to 40 years old, weighing

in the neighborhood of 140 pounds, brought into the room by an attendant. He found no physical defects of any kind, but the patient sat down when he was told to, stood up when induced to do so, turned around, opened his mouth when you asked him, but so far as to making any response, was entirely negative. He was asked what the effect of the sudden falling on the buttocks with considerable force would be and he stated it might be sufficient to cause injury and cause some brain concussion. That shock is given as one of the possible causes of that type of insanity, and it was possible that the fall might be hard enough to fracture some of the segments of the vertebrae, might even fracture the skull, and might form a blood clot on the brain, and one type of insanity was caused by a blood clot. In giving his view as to the cause, there were some questions put to him by the Commission, and objected to by the petitioner's attorney. He further stated that it was the ordinary type of insanity that the man had, and he could find no other reason for the occurrence of it, and very likely it was the shock. A hypothetical question was put to him detailing the history of the case, and he stated that he thought the injury was the exciting cause of the insanity. He was asked by the attorney whether he hit on his stomach or head. He stated that the hospital record showed that he had dementia praecox, and that he himself did not want to be committed to it, but that he believed they were correct in their diagnosis. He stated that it was his opinion that the injury was responsible for the condition.

The company offered nothing in rebuttal, and brought the case here without the testimony of Dr. Robinson, and that has been certified at the instance of this court since the case was brought here and briefed. This physician lived near Summers, Ark., and was a graduate of the medical department of the University of Tennessee, and had known the family for 30 years, living close by. After a good deal of questioning and objecting, he stated that the injury, as detailed, was capable of bringing about the insanity. He stated he could not appear at the hearing, and therefore the deposition was taken. He was cross-examined, and the cross-examination showed that he was familiar with the family of the claimant, though he never attended personally upon the claimant, but had known him for years. He was cross-examined concerning the bony structure and the spinal cord and canal, and what insanity was. That he had a number of insanity patients, but he did not treat them, sent them to the hospital.

The employer and insurance carrier do not appear to have gotten the deposition from Los Angeles or to have taken any deposition at the Vinita hospital where the claimant is confined. They have, however, filed a brief, setting out a good deal of the evidence that has been detailed here, and they make three contentions: First, that the Commission was not justified in finding that an accidental injury to the back, spine, and head was sustained by claimant, because there is no competent evidence upon which to make it, and the second complaint is that the Commission erred in finding that the claimant was injured during the course of his employment; and the third ground is that the Commission erred in making the award for the reason that the award was based upon medical testimony which was wholly based upon facts assumed but not proven in the record. We think unquestionably the evidence was sufficient to justify the finding of an accidental injury in the course of the employment. We think further that the Commission was justified in finding that the insanity, developing so soon afterwards and there being no symptoms of insanity before, was attributable to the injury. It could scarcely be referred to anything else except the injury as either the exciting or only cause for it.

Some complaint is made about the quality of the evidence not being the best evidence, and some citations are made holding that the best evidence was the kind that was demanded. The case of Standard Coal Co. v. State Industrial Commission, 139 Okla. 269, 281 P. 966, and the cases of Merrick v. Cross, 144 Okla. 40, 289 P. 267, and Forrester v. Marland, 142 Okla. 193, 286 P. 302, are cited. Attack is made upon the proposition of the evidence, outside of the attending physician's report, not justifying the finding. The case of C., R. I. & P. Ry. v. Anderson, 142 Okla. 276, 286 P. 787, as to circumstantial evidence, is cited, and the petition is finally based upon the proposition of a reversal for the want of competent evidence.

Technically, there might be found some cases that, under the strict rule of hearsay or some of the other technical rules that have been built up by courts, could be cited as showing errors in admission of evidence. Some of the evidence might not have been technically admissible, but we are forbidden in the case of courts, that proceed accord-

ing to technical rules, by statute to reverse cases except in the interest of substantial justice. Section 2822, C. O. S. 1921 (sec. 6005, R. L. 1910), is as follows:

"2822. Harmless Error. No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

However, the rules of procedure before a commission, largely administrative, necessarily are not as closely grooved as they are in courts. Section 7295, C. O. S. 1921, prescribes that the presumption shall be that the claim comes within the provision of the act, and that sufficient notice was given in the absence of sufficient evidence to the contrary, as well as some other presumptions. The other point is raised in the brief that sufficient notice of the injury was not given. We would scarcely know how to give more proof of notice than was given in this case, the accident happening on the premises, and the long-trusted employees of the petitioner in charge of the work being there when the accident happened, and taking care of the injured man, who also had been in the company's employ for several years.

Evidently, if the petitioner had thought that there was anything wrong with the evidence, they had full opportunity to get additional evidence. The hospital at Vinita was close by. The doctor at Los Angeles was not heard of any more after the statement of a desire by petitioners to take his deposition. Evidently, Dr. Ralston, if alive, could have been gotten. There was scarcely any other conclusion, in the light of the admitted facts here, that one could reach naturally, except that the insanity was traumatic in its nature. The determination as to what caused it was largely a question of fact. The Commission found the resulting disability, and we should not disturb its findings, under the frequent rulings of this court.

We think a statement in Modern Surgery by DaCosta, at page 786, on the subject, would be very much in point in this connection, wherein the author says:

"The injury may be assumed to be the cause of the insanity if the insane condition becomes manifest almost at once or soon after the accident; but if the symptoms do not appear until long after the accident, the traumatism may be considered to be the directly exciting cause in some cases, and not in others."

Tested by these rules of natural presumption, the Commission was within the law in making the award, and it will therefore be affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. RILEY, J., concurs in conclusions. CLARK, V. C. J., and ANDREWS, J., absent.